UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:15-cr-00285-APG-PAL |
| Plaintiff, | |
| v. | **REPORT OF FINDINGS AND RECOMMENDATION** |
| BENJAMIN GALECKI, | (Mot. Dismiss – ECF No. 207) |
| Defendant. | |

Before the court is Defendant Benjamin Galecki's ("Galecki") Motion Dismiss Due to Prosecutorial Delay (ECF No. 207), which was referred for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rues of Practice. The court has considered the Motion, co-defendant Ryan Eaton's Motion for Joinder (ECF No. 211), the Government's Response (ECF No. 220), and Galecki's Reply (ECF No. 223).

**BACKGROUND**

I.    **INDICTMENT (ECF NO. 1)**

Galecki was initially charged in a seven-count Indictment (ECF No. 1) returned October 13, 2015, with conspiracy to engage in financial transactions to promote unlawful activity in violation of 18 U.S.C. § 1956(h); conspiracy to transport funds to promote unlawful activity in violation of 18 U.S.C. § 1956(h); conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance analogue intended for human consumption in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C) and 846; maintaining a drug involved premises and aiding and abetting in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and conspiracy to misbrand drug in violation of 18 U.S.C. § 371.

The indictment alleges defendants Galecki and Ritchie were partners in Zencense Incense Works, LLC, a Florida corporation involved in the business of manufacturing and distributing synthetic cannabinoid products, colloquially referred to as "spice."  Zencense, later named ZIW, Inc., with the aid of employee R.E., allegedly manufactured up to 200 kilograms of synthetic cannabinoid product per week in a Las Vegas warehouse at 5435 Desert Point Drive between June 1, 2012 and July 25, 2012 when a federal search warrant was executed there.

## II.    SUPERSEDING INDICTMENT (ECF NO. 56)

A Superseding Indictment (ECF No. 56) was returned August 24, 2016, charging Galecki with conspiracy to engage in financial transactions to promote unlawful activity in violation of 18 U.S.C. § 1956(h); continuing criminal enterprise in violation of 21 U.S.C. § 848; conspiracy to transport funds to promote unlawful activity in violation of 18 U.S.C. § 1956(h); conspiracy to engage in financial transactions to promote unlawful activity in violation of 18 U.S.C. § 1956(h); conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; conspiracy to transport funds to promote unlawful activity in violation of 18 U.S.C. § 1956(h); conspiracy to commit  wire fraud in violation of 18 U.S.C. § 1349; transporting funds to promote unlawful activity and aiding and abetting in violation of 18 U.S.C. § 1956(a)(2)(A) and 18 U.S.C. § 2; conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance analogue intended for human consumption in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C) and 846; conspiracy to manufacture, possess with intent to distribute a controlled substance analogue to the extent intended for human consumption in violation of 21 U.S.C. §§  841(a)(1), 841(b)(1)(C) and 846; maintaining a drug-involved premises and aiding and abetting in violation of 21 U.S.C. § 856(a)(1) and 2; conspiracy to misbrand drug in violation of 18 U.S.C. § 371; conspiracy to launder money instruments in violation of 18 U.S.C. § 1956(h); conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; mail fraud and aiding and abetting in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; wire fraud and aiding and abetting in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2; conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance and a controlled substance analogue to the extent intended for human consumption in violation of 21

U.S.C. § 841(a)(1), 841(b)(1)(C) and 846; possession with intent to distribute a controlled substance and a controlled substance analog to the extent intended for human consumption and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2; conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance analogue to the extent intended for human consumption in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 846; manufacture a controlled substance analogue to the extent intended for human consumption and aiding and abetting in violation of 21 U.S.C. § 841(a)(1), 841(1)(C) and 18 U.S.C. § 2; distribution of a controlled substance analogue and aiding and abetting in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2; maintain a drug-involved premises and aiding and abetting in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and possession of a listed chemical with the intent to manufacture a controlled substance analogue intended for human consumption and aiding and abetting in violation of 21 U.S.C. § 841(c)(1) and 18 U.S.C. § 2.

III.    THE PARTIES POSITIONS

   A. Galecki's Motion to Dismiss (ECF No. 207)

      The current motion seeks to dismiss the superseding indictment on the grounds that the pre-indictment delay in this case amounts to a due process violation.  The motion relates the procedural history of the investigation of defendants' conduct in Las Vegas beginning in July 2012 leading up to the application for, and execution of, a search warrant on a Las Vegas warehouse at 5435 Desert Point Drive on July 25, 2012.  The motion asserts that on the same day of the search, co-defendant Ritchie called Escambia County Deputy Sheriff Doyle Gresham requesting to speak with the DEA.  Gresham called DEA Special Agent Claude Cosey ("SA Cosey") who later called Mr. Ritchie.  The two agreed that Cosey would come out to the Zencense production facility in Pensacola, Florida the following day.  On July 26, 2012, Ritchie gave Cosey a tour of the facility and samples of the product and asked Cosey if he believed there was any violation of federal drug law.  SA Cosey was deposed in a related consolidated civil forfeiture action on May 20, 2015 in Pensacola, Florida.  Excerpts of his deposition transcript are attached as Exhibit 3 to the motion.  SA Cosey testified that Ritchie stated that if Cosey told Ritchie he was doing something illegal Ritchie would stop immediately.  However, Cosey did not tell Ritchie that.

The motion relates that over the next seven weeks Ritchie called Cosey on other occasions. On September 13, 2012, Cosey and law enforcement officers from the sheriff's office, the environmental enforcement unit, and the fire marshals came to inspect the manufacturing facility. Mr. Galecki and Ritchie were present, and towards the end of the visit, Ritchie asked to speak with SA Cosey and Sergeant Workman of the Escambia County Sheriff's Office. Quoting excerpts from the deposition transcript, the motion states Ritchie asked the officers whether he was violating the law and Cosey responded "if what you are producing and distributing is not a controlled substance, I cannot . . . interfere with your ability to conduct commerce." SA Cosey also testified he told Ritchie that on September 13, 2012, that "while what you are doing may be legal now, it could change in the future."

The motion asserts that later that afternoon, Ritchie called Cosey again and told him the defendants did not want to be under suspicion and had decided to get out of the business. The business was sold within two months, and during that two-month period, neither SA Cosey nor anyone else told the defendants that the substances they were selling were structurally substantially similar to a controlled substance, specifically JWH-018.

Although the Northern District of Florida declined to prosecute the defendants, several civil forfeiture actions and criminal prosecutions were brought elsewhere. On January 18, 2013, the government filed its first civil forfeiture action in this district. *United States v. $177,844.68 in U.S. Currency*, Case No. 2:13-cv-00100-JCM-GWF. A second civil forfeiture action was filed in this district on May 29, 2013, Case No. 2:13-cv-00947-JCM-GWF, seeking forfeiture of over $1,000,000 and several vehicles. The cases were ultimately consolidated on August 18, 2014. The complaint in the second civil forfeiture action was amended to include additional assets and property. A third civil forfeiture action was filed in this district on February 27, 2015, Case No. 2:15-cv-00350-APG-CWH, which sought forfeiture of real property located in Las Vegas.

Almost three years after the execution of the search warrant in Las Vegas, an indictment was filed in the Northern District of Virginia on April 15, 2015. Galecki was arrested at his home in Pensacola, Florida, on October 5, 2015. Ritchie was away from his home in Utah when law enforcement arrived to arrest him, but flew to Pensacola the next day to turn himself in.

The first indictment in this case was filed on October 13, 2015.  An indictment was filed in the District of Alabama on October 29, 2015.  The government obtained restraining orders in excess of the amount sought in the forfeiture actions effectively freezing Galecki and Ritchie's assets.  Defendants are now currently charged in three different federal districts.  The motion contends that "it appears that the delay in prosecuting this case was done in order for the government to gain a tactical advantage."

Mr. Galecki argues the superseding indictment against him should be dismissed because excessive pre-indictment delay has violated his due process rights under the Fifth Amendment.  Galecki acknowledges that to establish a Fifth Amendment violation "a defendant must prove that he suffered actual, non-speculative prejudice from the delay."  To meet this burden, the defendant must show exactly how the loss of evidence or witnesses was prejudicial.  If the defendant demonstrates actual prejudice, the Ninth Circuit requires the court to weigh the reasons for the delay against the prejudice caused by the delay.  To show a due process violation the defendant must show that the prejudicial delay offends fundamental conceptions of justice.

Galecki also acknowledges that the Supreme Court has held that statutes of limitations provide the primary protection against oppressive delay in prosecution.  Citing *United States v. Swacker*, 628 F.2d 1250, 1254 n.5, (9th Cir. 1980), Galecki argues that the Ninth Circuit has indicated that pre-indictment delay that results from negligence or worse may violate due process. In determining whether the defendants' due process rights have been violated, the court applies a balancing test.  If the government's conduct is merely negligent, the defendant must show greater prejudice suffered by the delay.

The motion cites out-of-district cases holding that although a defendant may bring a pretrial motion to dismiss for pre-indictment delay, the court may not recognize the extent of the prejudice to a defendant until trial.  The motion argues that in this case the defendants have been clearly prejudiced by the delay of the prosecution because they have now been charged in multiple jurisdictions and are defending three cases at the same time.

Additionally, Galecki maintains the government interfered with the defendants' ability to obtain the testimony of Dr. Berrier, a Senior Research Chemist with DEA's Office of Forensic

Sciences.  Dr. Berrier concluded that UR-144 is not substantially similar in chemical structure to JWH-018.  His testimony would establish that the substance involved in this case is not outlawed by the Analogue Act.  The motion claims the government has apparently launched an investigation into Dr. Berrier because in a recent filing in the Fourth Circuit opposing defendants' request to be released on bond, the government represented that Dr. Berrier was "under a cloud of issues related to his employment at the DEA, his conduct on the job, his performance on the job and the way in which his employment with DEA ended."  In the consolidated forfeiture action, Magistrate Judge Foley previously granted in part a motion to compel the deposition of Dr. Berrier.  However, before Dr. Berrier could be deposed "the government obtained criminal charges."  Mr. Galecki claims the "apparent delay in prosecuting this case, has impacted the potential testimony of Dr. Berrier and his ability to appear as a witness on behalf of the defense."

Galecki argues that the government has not provided any excuse for not charging the defendants after the search warrant was executed in July 2012.  Law enforcement was apparently investigating the defendants in multiple jurisdictions at the same time.  The fact that the government also filed forfeiture actions after the search indicates the government was clearly delaying filing criminal charges.  The superseding indictment in this case added a continuing criminal enterprise charge, money laundering counts, and mail fraud.  These charges are not based on new facts, but appear to be vindictively added because Galecki and Ritchie exercised their constitutional right to a jury trial in the Virginia case.

Galecki argues that "it appears the decision to delay prosecution in Nevada was done in order to assert multiple indictments at the same time against the defendants … to create a tactical advantage by attempting to overwhelm the defendants…."  By breaking the charges down into piecemeal litigation "the government apparently hedged itself in the event of an unfavorable jury verdict or ruling."  The delayed prosecution has also interfered with the defendants' resources, and their ability to maintain counsel of choice has been hindered.  Galecki has been prejudiced because his prior counsel in this action did not timely address certain issues such as joining in defendant Ritchie's motion to dismiss on double jeopardy grounds, or by filing an objection to the order denying defendant's motion to dismiss.  The government obtained a tactical advantage by freezing

the defendants' funds, restricting witnesses who are now in custody, and by inhibiting the defendants' ability to assert their speedy trial rights in the various jurisdictions. For all of these reasons, the court should dismiss the indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure.

Co-defendant Eaton filed a one-line joinder stating he "hereby adopts and incorporates the arguments set forth in Benjamin Galecki's motion as his own."

**B. The Government's Opposition (ECF No. 220)**

The government opposes the motion arguing that Ritchie and Galecki were first indicted in this district on October 13, 2015, for conduct that occurred in Nevada in 2012. The superseding indictment returned on August 24, 2016, added Eaton as a defendant and charged all three defendants with conduct primarily occurring between March and August of 2012.

The motion points out that since the defendants were initially charged in October 2015, the defendants have consented or requested that the court delay the trial on six occasions. The trial date was initially set for March 7, 2016. The first trial was vacated pursuant to a joint complex case motion and rescheduled for October 17, 2016. At the time the government's response was filed trial was set for October 29, 2018. Five days before this motion was filed seeking to dismiss the case for pre-indictment delay, the defendants jointly filed a motion to continue the trial (ECF No. 205).[1]

The government acknowledges that in the Ninth Circuit, pre-indictment delay within the statute of limitations may in some circumstances require dismissal. However, the defendant has the heavy burden of proving that pre-indictment delay caused actual prejudice. Additionally, the defendant must show the delay was caused by government culpability before the court may find a due process violation. The Ninth Circuit applies a two-prong test in assessing whether excessive pre-indictment delay has resulted in a due process violation. The defendants must first prove that they suffered actual non-speculative prejudice from the delay. If a defendant shows actual prejudice, the court must find that the delay, balanced against the prosecution's reasons for the

---

[1] On August 7, 2018, the district judge conducted a hearing and granted defendants' joint motion to continue the trial, resetting trial for January 7, 2019, at 9:00 a.m.

1    delay, "offends those fundamental conceptions of justice which lie at the base of our civil and

2    political institutions." *United States v. Sherlock*, 962 F.2d 1349, 1353–54 (9th Cir. 1989). Both

3    prongs of the test must be established before the court may find the defendants' due process rights

4    were violated and the Supreme Court has noted that few defendants have been able to establish

5    that they were prejudiced by pre-indictment delay.

6         The court should deny defendants' motion to dismiss for prosecutorial delay because they

7    make no showing of actual prejudice as a result of the lapse of time between the Las Vegas

8    warehouse search and seizure in late July 2012 and the subsequent indictments. Additionally, "any

9    speculative prejudice is not attributable to the government." The decisions to file charges in three

10   jurisdictions has already been addressed by the court in other defense motions. The decisions to

11   initiate prosecutions in different districts were made separately by representatives in the districts,

12   and the cases involve separate crimes in separate districts, and cannot support a finding of

13   prejudicial delay.

14        The government disputes that it interfered with the potential testimony of Dr. Arthur

15   Berrier. The government contends that any testimony from Dr. Berrier is irrelevant in this case.

16   He opined in an email that UR-144 is not substantially similar to JWH-018. However, UR-144 is

17   not charged in this case. Although UR-144 and XLR-11 are very similar in structure, the

18   government's position is that the molecular structure of XLR-11 makes it a distinct substance. The

19   defendants have not demonstrated that Dr. Berrier has opined as to XLR-11. Therefore, his opinion

20   is inadmissible. However, if the court decides his testimony is relevant and admissible, Dr.

21   Berrier's testimony would be cumulative to the expert testimony of defense experts Drs. Gregory

22   Dudley and Richard Stouch. According to the defendants' expert notices (ECF Nos. 55, 96), both

23   of these doctors can offer opinion testimony that XLR-11 is not an analogue of JWH-018.

24        Even if the court finds Dr. Berrier's testimony is relevant and not cumulative, the

25   government is not responsible and could not have "predicted that Dr. Berrier would run afoul of

26   the law." Dr. Berrier was arrested and charged for soliciting a minor under the age of fifteen for

27   the purpose of sexual contact in June 2017. This charge had nothing to do with his work and was

28   off the premises. Dr. Berrier is still available to testify, and the motion does not claim that his

testimony has been affected by the passage of time. Rather, because of his conduct, Dr. Barrier may now be a less credible witness. But this is insufficient to show actual prejudice. The government points out this case was scheduled for trial three times before Dr. Barrier was arrested in 2017. Any damage to Dr. Berrier's credibility is solely attributable to Dr. Berrier and the post-indictment continuances of the trial date, not due to any pre-indictment delay attributable to the government. If the court finds that the defendants suffered actual prejudice, they must demonstrate that the government is responsible for the prejudice, and that the prejudice is not outweighed by the government's reasons for the delay.

The government also disputes that any pre-indictment delay was the result of the government coordinating to charge this case in three different jurisdictions, over-burdening the defendants, and draining their resources to create a tactical advantage. The court has already denied Ritchie's Motion to Dismiss (ECF No. 111) based on double jeopardy with the Eastern District of Virginia case. A pending Report of Findings and Recommendation (ECF No. 204) recommends denial of subsequently-filed motions to dismiss based on double jeopardy, the application of the Analogue Act, and failure to state an offense. The prior motions to dismiss have already litigated the government's position that distinct crimes were committed in distinct places. Having to face trial and defending forfeiture actions in the jurisdiction in which the crimes were committed does not amount to undue prejudice. Rather, "it's a result of the defendants' own actions of manufacturing spice intended for human consumption and profiting significantly in that elicit operation."

The defendants have failed to meet their burden of establishing the two-prong test promulgated by the Ninth Circuit in *Sherlock*. The defendants' claim of prejudice from the delay between the Las Vegas warehouse seizure and the indictment is purely speculative and not attributed to the government. Finally, the defendants' arguments are severely undercut by their recent motion for a sixth continuance of the trial date.

**C. Galecki's Reply (ECF No. 223)**

Mr. Galecki replies that the pre-indictment delay in this case has nothing to do with the defendants or their counsel, but "rather was apparently due to the deliberate delay created by the

government in an effort to gain a tactical advantage." Since this case began, Galecki and Ritchie were tried twice in the Eastern District of Virginia. The first trial resulted in a hung jury. The second trial resulted in convictions which were overturned by the Fourth Circuit on appeal and remanded. The government apparently concedes that it arranged for simultaneous prosecutions in three different federal districts in its opposition. The government's argument that prosecutions in different districts are appropriate because they are distinct crimes in distinct places "highlights that the instant prosecution is just another opportunity for the government to forum shop with the hopes of securing a conviction against the Defendants in at least one jurisdiction." The reply reiterates that this prosecution strategy "was apparently brought to obtain a tactical advantage, and the government has obtained just that."

In this case the defendants have been substantially prejudiced by the delay in bringing the prosecution because they have now been charged in multiple jurisdictions and are defending three cases at the same time. Judge Foley compelled the deposition of Dr. Berrier in the civil forfeiture case and the apparent delay in prosecuting this case has impacted Dr. Berrier's potential testimony and ability to appear as a defense witness. The DEA's own chemist disagreed with the government's classification of the substances involved in this case. The defendants have been prejudiced because, if they call Dr. Berrier, the government will almost certainly try to impeach and "smear" him at trial because of his recent criminal charge. As a result, Dr. Berrier's testimony "would potentially not be evaluated on its merits." The delay has therefore violated defendants' due process rights and the superseding indictment should be dismissed.

## DISCUSSION

The due process clause of the Fifth Amendment of the United States Constitution protects defendants from improper pre-indictment delay. *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (quoting *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989)); *United States v. Krasn*, 614 F.2d 1229, 1235 (9th Cir. 1990). "Generally, any delay between the commission of a crime and an indictment is limited by the statute of limitations." *Corona-Verbera*, 509 F.3d at 1112 (citing *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992)). A statute of limitations provides a predictable, legislatively enacted limit on prosecutorial delay. *United*

1   *States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also United States v. Marion*, 404 U.S. 307, 322

2   (1971) (the applicable statute of limitations is "the primary guarantee against bringing overly stale

3   criminal charges").  In some circumstances, however, the Due Process Clause requires dismissal

4   of an indictment brought within the statute of limitations period.  *Corona-Verbera*, 509 F.3d at

5   1112 (quoting *Huntley*, 976 F.2d at 1290); *Marion*, 404 U.S. at 324–25 (noting that "the Due

6   Process Clause would require dismissal of the indictment" where the government's delay caused

7   actual and substantial prejudice, and the delay was "an intentional device to gain tactical advantage

8   over the accused").

9         To succeed on a claim denial of due process because of pre-indictment delay, a defendant

10  must satisfy both prongs of a two-part test.  *Corona-Verbera*, 509 F.3d at 1112.  First, the defendant

11  must prove "actual, non-speculative prejudice from the delay." *Id*. (citing *United States v. Huntley*,

12  976 F.2d 1287, 1290 (9th Cir. 1992)).  The Ninth Circuit has held that "establishing prejudice is a

13  'heavy burden' that is rarely met."  *Id*. (citing *Huntley*, 976 F.2d at 1290).  If actual, non-

14  speculative prejudice is shown under the second prong of the test the "length of the delay is

15  weighed against the reasons for the delay."  *Id*.  The defendant must show that the delay "offends

16  the 'fundamental conceptions of justice which lie at the base of our civil and political institutions'."

17  *Sherlock*, 962 F.2d at 1353–54 (quoting *Lovasco*, 431 U.S. at 790).  The second prong of the test

18  applies only if the defendant has demonstrated actual prejudice.  *Corona-Verbera*, 509 F.3d at

19  1112 (citing *United States v. Barken*, 412 F.3d 1131, 1136 (9th Cir. 2005)).

20        "'Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to

21  establish actual prejudice'."  *Id*. (quoting *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir.

22  1995)).  Consequently, a defendant must show both that lost testimony, witnesses, or evidence

23  "meaningfully has impaired his ability to defend himself," and the "proof must demonstrate by

24  definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to [his]

25  case."  *Huntley*, 976 F.2d at 1290; *Corona-Verbera*, 509 F.3d at 1113 (defendant failed to show

26  actual prejudice where he merely speculated as to what witnesses would have said and offered "no

27  affidavits nor any non-speculative proof as to how he was prejudiced by the loss of his witnesses").

28  In general, "protection from lost testimony 'falls solely within the ambit of the statute of

1    limitations.'"  *Corona-Verbera*, 509 F.3d at 1113 (quoting *Sherlock*, 962 F.2d at 1354).

2            The court finds Galecki has failed to meet his heavy burden of establishing that he suffered

3    actual, non-speculative prejudice from the pre-indictment delay.  The Ninth Circuit has made it

4    clear the burden to prove actual prejudice is a heavy one, and district courts must apply the actual

5    prejudice test "stringently."  Galecki has not shown any prejudice from the delay between the

6    initial investigation leading up to the execution of the search warrant on July 25, 2012, and the

7    return of the indictment on October 13, 2015.  The motion does not claim he lost any evidence,

8    witnesses, or testimony during this timeframe.  The motion does not even claim that Br. Berrier is

9    unavailable as a witness, only that he will likely be less credible and subject to impeachment

10   because of his pending criminal charge.  The motion does not explain why Dr. Berrier was not

11   deposed in the civil forfeiture action.  Judge Foley granted defendants' request to depose Dr.

12   Berrier in the consolidated civil forfeiture action in an order entered July 10, 2015.  *See* Order

13   (ECF No. 119), *United States v. $177,844.68 in U.S. Currency*, 2:13-cv-00100-JCM-GWF.  The

14   defendants deposed DEA Agent Cosey in the consolidated civil forfeiture action on May 20, 2015.

15   *See* Cosey Dep., May 20, 2015, Mot. Ex. 3 (ECF No. 207-3).  Yet no explanation at all is provided

16   for why Dr. Berrier was not deposed.

17           Additionally, both Messrs. Galecki and Ritchie have disclosed expert witnesses to provide

18   opinion testimony about whether the substances at issue in this case qualify as analogues.  Galecki

19   disclosed Dr. Stouch as an expert witness on December 7, 2016.  The disclosure states he is

20   expected to testify based on 30 years of experience in the fields of chemistry and biochemistry,

21   and 30 years of experience in the discovery of new pharmaceuticals "that he does not consider the

22   chemical structures of UR-144 and XLR-11 to be substantially similar to that of JWH-018."  *See*

23   Notice of Expert Witness Testimony (ECF No. 96).  Ritchie filed a Notice of Expert Witnesses

24   (ECF No. 55) on August 3, 2016, disclosing as an expert witness Dr. Gregory B. Dudley, Chair of

25   the Department of Chemistry at West Virginia University.  Dr. Dudley authored a report titled

26   "Comparative Structural Analysis of JWH-018, UR-144, and XLR-11."  ECF No. 55-2.  He

27   concludes that "the similarities and differences between the chemical structures of JWH-018 and

28   UR-144/XLR-11 have been presented and analyzed.  In my opinion it is not appropriate to

1    designate these components as structural analogs." *Id.* Thus, both defendants will be able to offer

2    expert opinion testimony on the same subject matter as Dr. Berrier.

3        Mr. Galecki's arguments that the government brought three different prosecutions in three

4    different districts and filed civil forfeiture actions to gain tactical advantage is pure speculation.

5    The motion makes this claim using conclusory statements.  For example, the motion states "it

6    appears the decision to delay prosecution in Nevada was done in order to assert multiple

7    indictments at the same time against the Defendants … to create a tactical advantage by attempting

8    to overwhelm the Defendants…."  Mot. 16:19–22 (ECF No. 207).  He goes on to state that "by

9    breaking the charges down into piecemeal litigation, the government apparently hedged itself in

10   the event of an unfavorable jury verdict or ruling." *Id.* 16:22–25.  This claim is based completely

11   on counsel's *ipse dixit.*

12       Although the motion makes the conclusory assertion that the government obtained a

13   tactical advantage by freezing the defendants' assets, Galecki does not claim that he lacks adequate

14   funds to defend himself.  He does not identify the witnesses whose testimony is allegedly restricted

15   because they are now in custody.  He also does not explain how the defendants were inhibited in

16   their ability to assert their speedy trial rights in various jurisdictions.  Defending three criminal

17   prosecutions in three different districts and related forfeiture actions may certainly cause a

18   substantial strain on a defendant's financial resources.  However, Galecki has not established that

19   any conduct by the government has meaningfully impaired his ability to defend himself.

20       Under controlling Ninth Circuit precedent Galecki's failure to demonstrate actual prejudice

21   ends the court's inquiry.  Because Galecki does not meet his threshold burden of establishing actual

22   non-speculative prejudice, the court need not balance the length of delay against the government's

23   reasons for delay.  Galecki has not established a due process violation under the Fifth Amendment

24   has occurred.

25   / / /

26   / / /

27   / / /

28   / / /

1      For the reasons explained,

2      **IT IS ORDERED:** Defendant Ryan Eaton's Motion for Joinder (ECF No. 211) is

3   **GRANTED**.

4      **IT IS RECOMMENDED** that Defendant Benjamin Galecki's Motion to Dismiss Due to

5   Prosecutorial Delay (ECF No. 207) be **DENIED**.

6      DATED this 10th day of August, 2018.

7

8                                              _____
                                               PEGGY A. LEEN
9                                              UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28